FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA 5 MAR 30 PM 2: 34

OFFICE OF THE CLERK

| | |
|---|---|
| KENNETH E. KELLEY, | Case No |
| Petitioner, | |
| vs. | (PROTECTIVE) |
| | PETITION FOR A WRIT OF HABEAS CORPUS |
| STATE OF NEBRASKA, and MICHAEL KENNEY, Director of the Nebraska Department of Corrections', and DIANE SABATKA-RHINE, Warden, | 15 CV 105 |
| Respondents. | |

NOW INTO COURT comes KENNETH E. KELLEY, pro se, and hereby moves this Honorable Court pursuant to 28 U.S.C. 2241(A) (C)(3), 2244(d) (2), 2254 (e)(1) (2)(ii) (B) and 1651, hereby request relief from his illegal restraint and wrongful conviction.

The Petitioner, moves this Court for relief afforded in the form of a writ of habeas corpus as the Respondents' are in violation of the 5th 6th, and 14th Amendments to the United States Constitution, **Article I, Section 3, 11** and **23** of the Nebraska Constitution to which the Petitioner is equally entitled.

1. Petitioner is a citizen of the United States and Prior to his incarceration was a resident of the County of Lancaster and the City of Lincoln, Nebraska.

2. Petitioner is now and for the past (10) years has been

1

RECEIVED

MAR 3 0 2015

CLERK
U.S. DISTRICT COURT
OMAHA

actually unjustly and unlawfully imprisoned and restrained of
his liberty and detained under color of authority of the State
of Nebraska, and in the constructive custody of Michael Kenney,
Director of the Nebraska Department of Corrections, whereas the
Petitioner resides at the Nebraska State Penitentiary located
in the City of Lincoln, and the County of Lancaster Nebraska.

3. The cause or pretense of such imprisonment or restraint
according to my best knowledge and belief, as a commitment issued
by the Lancaster County District Court, based upon an information
filed on April 16, 2005, with two (2) counts of first degree
sexual assault, two (2) counts of kidnapping, two (2) counts
of use of a weapon to commit a felony. and two (2) counts of
third degree assault on an officer.

4. Pursuant to a plea-agreement, an amended information
was filed on May 9, 2006, charging and only lodging two (2)
counts of first degree sexual assault. All other charges lodged
from the outside, were dismissed accordingly.

5. Petitioner entered a plea of nolo-contendere to the
aforesaid charges, count I and II (first degree sexual assault)
under the advise of counsel Sandy Pollack, said pleas were
accepted and deemed voluntary, knowingly, and with an
understanding of the rights waived by virtue of the plea.

6. Consequently, on August 1, 2006, Petitioner was sentenced on count I (first degree sexual assault) to a term of imprisonment of 20 to 25 years, and on count II (first degree sexual assault) to a term of 20 to 25 years in the Nebraska Department of Correctional Services ("NDCS"). Said sentences were imposed and pronounced to be served consectutively, totaling 40 to 50 years.

7. Petitioner pursued a timely direct appeal to the Nebraska Appellate Court, assigning as errors, (1) ineffective assistance of trial counsel; and (2) excessive sentences judgments from the Lancaster County, district court.

8. The Nebraska Court of Appeals affirmed the district court's judgment and decision via direct appeal in Case No: A-06-922.

9. Plaintiff was represented by four (4) different attorney's: Lancaster County Public Defender Joe Nigro, during arraignment: attorney Korey Reiman, during plea-in-abatement, discovery, and progression hearing, attorney Sandy Pollack, via depositions taken of witnesses, motion to sever, motion to suppress, plea-colloquy, and sentencing proceedings; Lancaster County Public Defender, Timothy Eppler, via direct appeal.

10. On June 29, 2010, Petitioner filed with the Lancaster

3

County District Court, his Verified Motion to Vacate and Set Aside Conviction and Sentences, alleging the following: (1) Ineffective assistance of counsel, alleging that he was denied his right to effective assistance of counsel; (2) Due process Confrontation; (3) Right to a fair trial; and (4) Right to a fair Sentencing proceedings in violation of the rights under 5, 6 and 14 Amendments of the United States Constitution and Article I, Section 3 and 11 of the Nebraska State Constitution.

11. After review from the Lancaster County District Court, and determination that the Court had jurisdiction over the parties and subject matter hereto, the Court entered its findings and conclusions, and in the Courts conclusion it stated: the defendant has set forth allegations and essentially has asked the court to speculate as to the underlying facts and the possible prejudice. The court has no authority to speculate. The court finds that the defendant has failed to establish a basic of relief and failed to allege sufficient factual allegations that constitute an infringement of his rights under the Nebraska or federal Constitution... Those mere statements do not have the sufficient factual allegations to support the denial of rights and therefore do not rise to a cliam that the court can support.

As such, the Lancaster County District Court denied postcoviction relief.

4

12. Petitioner timely filed his Notice to Prosecute an Appeal
to the Nebraska Court of Appeals. See **A-11-0411**.

13. On June 14, 2011, the Nebraska Court of Appeals issued
a Mandate dismissing the appeal, See. **A-11-0411**.

## STATEMENT OF FACTS

14. Petitioner herein was charged by information on April
16, 2005, with two (2) counts of first degree sexual assault,
two (2) counts of kidnapping, two (2) counts of use of a weapon
to commit a felony, and two (2) counts of third degree assault
on an officer.

15. Pursuant to a plea-agreement, an amended information
was filed on May 8, 2006, charging and only lodging two (2)
counts of first degree assault. All other charges lodged from
the outset, were dismissed accordingly.

16. Petitioner entered a plea of nolo-contendrer to the
aforesaid charges, count I and II (First degree sexual assault)
under the advice of counsel 'Sandy Pollack'. Said pleas were
accepted and deemed voluntary, knowingly, and with an under-
standing of the rights waived by virtue of the plea.

17. Consequently, on August 1, 2006, Petitioner was
sentenced on count I (First degree sexual assault) to a term

5

of imprisonment of 20 to 25 years, and on count II (first degree
sexual assault) to a term of 20 to 25 years in the nebraska
Department of Correctional Services ("NDCS"). Said sentences
were imposed and pronounced consecutively to be served, totalling
40 to 50 years.

18. Petitioner pursued a direct appeal to the Nebraska
Appellate Court, assigning ineffective assistance of counsel
of trial counsel and an excessive sentence judgment by the
district court.

19. The Nebraska Court of Appeals affirmed the district
court's judgment and decision via direct appeal in Case No:
**A-11-06-922.**

20. Petitioner filed a timely State Postconviction Motion
on June 29, 2010.

21. In Petitioner's State Postconviction, Petitioner's
grounds and claims for relief were as follows: (1) Petitioner
was denied his right to effective assistance of counsel, due
process confrontation, and a fair trial and fair sentencing
proceedings in violation of his rights under the **5th 6th** and
**14th** Amendments of the United States Constitution, **Article I,
Section 3** and **11** to the Nebraska Constituion.

6

22. During a Plea-in-abatement proceeding on August 18, 2005, in that said counsel failed to submit or argue a cognizant claim as to the abatement of the preliminary hearing, and the charges lodged against Plaintiff. counsel only submitted an exhibit of the preliminary transcripts, inclusive of requesting that the court allow an submission of the filing of a two-or-three page letter brief in support. It was counsel that conceded that Plaintiff doesn't have any further evidence in support of this plea-in-abatement. (BOE 5:2-6:23).

Counsel's intention into the plea-in-abatement was long-sighted and lacking necessary investigative tolls that would pierce the states' lodged charges against Plaintiff. Any objectively reasonable attorney would have legally researched and investigated the testimony proffered during preliminary hearing, prior to the Plea-in-abatement proceeding, and merited a worthy argument conducive to the requested proceedings. As a result of the unreasonable performance of trial counsel, Plaintiff's convictions and sentences violated federal and state constitutions. This argument was not presented on direct appeal because of the ineffective assistance of counsel during appellate review in violation of the 6th and 14th Amendments of the United States Constitution. Accordingly, appellate counsel, Timothy Eppler, was ineffective for not assigning this argument and prejudicial error of trial counsel ineffectiveness on direct appeal.

The nature of the above error merits a presumption of

7

prejudice and automatic reversal because counsel failed to
subject the prosecution's case to meaningful adversarial testing
during the pretrial level and via direct appeal.

23. During the plea-in-abatement hearing, defense motion
to reduce Plaintiff's bond was entertained before the court
the illicit reasoning submitted by the state (Steve Schmidt)
"...Mr. Kelly probably is as close to a serial rapist as we've
seen in awhile..." was in effect, egregious, inflammatory, and
a serious defamatory attack on Plaintiff's character prior to
trial or his plea of nolo contendre. (BOE 9:12-14). Plaintiff's
did not instantly interpose, nor object, to the above stated
remarks. Counsel provided no rebuttal argument on Plaintiff's
behalf (BOE 9:12-15).

24. The egregious and inflammatory remarks by the above-
named prosecutor was an unequivocal cause for challenge in aid
of Plaintiff's defense and his character.

25. The above claim was not presented on direct appeal
because the ineffective assistance of appellate counsel via
direct appeal in violation of the Plaintiff's Sixth Amendment
of the United States Constitution. Plaintiff's appellate counsel
failed to assign the above statement of fact, nor assign a claim
as ineffective assistance of trial counsel for failing to
challenge the prosecutor's misconduct via the egregious and

8

inflammatory remarks.

26. The overview by the prosecution proffering the criminal charges and the penalties thereof exist as an irregular, clear plain error, and illegal admonishment that the law does not counterance.

The above proceeding was held on July 6, 2005, during said admonishment and advisory overview of the charges lodged against Plaintiff was clearly illegal, injudicial, and unlawful. The cat allowed to be perpetrated conveys a miscarriage of justice, epitomizes a tag-team cooperation by the court (sitting judge) and the prosecution. Nonetheless, counsel rendered ineffective assistance of counsel for failing to intervene, or at best challenge and object to this illegal and injudicial act permitted to ensue.

27. It was trial counsel's duty, the minute the prosecutor began to advise or admonish what the judge is required to do, trial counsel was obligated to instantly object and intervene, making a preservation of the action for appeal purposes. Such acts tainted the hearing of this date and depreciated the integrity of judicial economy.

28. It should be noted that Plaintiff brought the court's attention, his dissatisfaction with defense counsel's (K. Reiman) representation (Supp. BOE 5:21-6:10) Given the abundant and

consistent deficient performance and omissions by said counsel, it is clear that this counsel was representing Plaintiff out of conflicting interests. The representation by said counsel from the outset tainted and tarnished the ensuing proceedings thereafter, and thus, counsel's removal from representation of Plaintiff, once new counsel (Sandy Pollack) entered an appearance, did and could not repair the damage already done prior to Plaintiff's Plea collaquy.

29. On May 8, 2006, Plaintiff, on the advise and direction of defense counsel (Sandy Pollack), entered a nolo contender plea to two (2) charges of first degree sexual assault in Case No. CRO5-475, albeit, Plaintiff had insisted on going to trial in these matters, in that it was his firm belief, without doubt that, the individual ladies he was accused of sexually assaulting, consented to endure in sexual intercourse; there existed questionable instance wherein the individual victims' (Lindsay Ballard, Katherine Clark, Brandi Allen, and Ashlianne Ivy) depositions and statements were accurate or concrete. Plaintiff's defense counsel was apprised of this information by Plaintiff, yet counsel dismissed and ignored Plaintiff's quest for justice. When Plaintiff would pose inquiries and questions to defense counsel about the states' having to prove its burden, and the elements needed to be proved and shown via a trial, defense counsel would shrug and become persistent in persuading Plaintiff to plea nolo contendre to the amended

10

information charging two (2) first degree sexual assaults, facing
1 to 50 years each. Counsel not warn, apprise, or advise
Plaintiff that each charge or count, could result in two (2)
seperate sentences, having a double-time effect, consecutive
in term of imprisonment. In fact, defense counsel failed to
propose a request to the state prosecution and the sentencing
court, to impose sentences on both counts, concurrent and
amalgamated.

30. Counsel failed to request a 27-404 hearing, a 404
hearing should have been requested by defense counsel (Pollack)
prior to counsel's reading and advising Plaintiff to plea nolo-
contendre, in order to sufficiciently challenge the statements
and depositions of the above-named victims.

31. Plaintiff's plea agreement was reached between the
pparties. After being advised of his rights, Plaintiff plead
nolo-contendre to the Amendmed Information filed by the State
in CRO5-475, (A-06-922, T121-122, 27:13-17;29:13-16).

## ARGUMENT

### I

**PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL**

32. Under the Sixth Amendment to the United State

11

Constitution and Article I, Section 3, 11 and 23 of the Nebraska
Constitution, Petitioner was entitled to effective assistance
of counsel at trial. His trial counsel's representation fell
below an objective reasonable standard which resulted in
insurmountable prejudice to Petitioner. Thus, pursuant to 28 U.S.
C. 2254, Petitioner's petition for a writ of habeas corpus should
be granted, and he should be released from state custody,
**Strickland v. Washington, 466 U.S. 668,687-88, 694-96 (1984).**

-

**A. Trial Counsel's Representation Fell Below an Objective
Reasonable Statndard.**

**1. Trial Counsel Was Ineffective by Virtue of His Failure
to Object to Inflammatory Remarks Made By the Prosecution.**

Pursuant to the familiar Strickland two-prong test, trial
counsel's conduct is ineffective if his or her acts or omissions
at the time of trial were outside "the wide range of professional
competent assistance." **Lewis v. Alexander, 11 F.3d 1349, 1352
(8th Cir. 1993),** qouting **Strickland v. Washington, 466 U.S. at
690.** More specifically, failure to object to inflammatory
remarks made by the prosecution. **Porcaro v. United States, 784
F.2d 38 (1st Cir. 1986)** also see **Seehan v. State of Iowa, 37
F.3d 389 (8th Cir. 1985).**
During a plea-in-abatement hearing, defense motion to
reduce Petitioner's bond was entertained before the court the

12

illicit reasoning submitted by the state (Steve Schmidt) "...Mr.
Kelly probably is as close to a serial rapist as we've seen
in awhile..." was in effect, egregious, inflammatory, and a
serious defamatory attack on Petitioner's character prior to
trial or his plea on nolo contendre. (BOE 9:12-14). Petitioner's
trial counsel did not instantly interpose, nor abject, to the
above stated remarks. Counsel provided no rebuttal concerning
this highly prejudicial inflammatory remarks. (BOE 9:12-14,15,16).

The States assertion to this argument is contrary to the
United States Supreme Courts' ruling in **Strickland v. Washington,
466 U.S. 668, 687-88, 694-96 1984).**

Trial counsel's failure to object to the prosecutions
inflammatory remarks to the sitting judge implying that the
Petitioner had committed numerous raps constitutes prejudicial
constitutional error in which prejudice should be presumed.
Because the sitting judge, in absence of objection is left to
infer the inflammatory remarks as fact. Had trial counsel made
the proper objection a reasonable probability exist that the
outcome of Mr. Kellys fate would have been different, because
the evidence against the petitioner was restricted to a consenual
act defense where the alleged vitims was former friends whom
he shared casual relationships with.

In addressing the "prejudice" component of the **Strickland**
test, we focus on whether counsel's deficient performance renders
the results of the trial unreliabe or the proceeding
fundamentally unfair. **Id.** To show prejudice, the Petitioner

13

must demonstrate a reasonable probability that but for counsel's deficient performance, the result would have been different. **Id.** A reasonable probability is a probability sufficient to undermine confidence in the outcome. **Id.**

Furthermore, when a case presents layered ineffectiveness claims, we determine the prejudice prong of Petitioner's counsel's performance by focusing on whether trial counsel was ineffective under **Strickland** test. **Id.** Obviously, if trial counsel was not ineffective, then the Petitioner suffered no prejudice when appellate counsel failed to bring an ineffective assistance of trial counsel claim. **Id.**

Normally, a voluntary guilty plea waives all defenses to a criminal charge. **State v. Watkins, 277 Neb. 428, 433 (2009).**

As stated above Mr. Kelly suffered irreparable prejudice and as a direct result of this prejudice, he should be granted an evidentiary hearing, and then grated a new trial, and this court should consider the fact of way Mr. Kelly entered into a plea of nolo condentre, consider the allegations that the plea is the result of ineffective assistance of counsel. When a conviction is based upon a guilty plea or a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. **Id.**

As stated above, Mr. Kelly would have insisted on going

14

to trial had he knew that a reasonable probability existed.

The egregious and inflammatory remarks by the above-named prosecutor was an unequivocal cause for challenge in ad of Petitioner's defense and his character. For, it is causes such as this particularity, that the 6th Amendment of the U.S. Constitution provides, that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense, **Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792 (1963).** Any objectively reasonable attorney would have made a challenge for cause, to have the said remarks stricken, and at best a directive and order to the state prosecution to express its language and arguments with discretion devoid of revilement. As a result of counsel's failure and deficient performance, both during pre-trial and on direct appeal, the prosecutions misconduct involving this egregious and inflammatory remarks remains unscathed. Prejudice convened from the outset of these matters.

## ARGUMENT

### II

**PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S DIFICIENT INVESTIGATION.**

33. Appellant's case is governed by the AEDPA, which provides, in pertinent part, that a federal court can only grant

15

relief on a habeas claim adjudicated on the merits in state
court where that adjudication resulted in a decision that was
"contrary to", or involved an "unreasonable application of"
clearly established federal law, as determined by the Supreme
Court of the United States **28 U.S.C 2255(d)**. A state decision
is "contrary to" established federal law where it applies a
rule that contradicts federal law or reaches a result that
different result on materially indistinguishable facts. **Williams
v. Taylor, 529 U.S. 362, 405-06 (200)**. A decision involves an
"unreasonable application of" federal law where the state court
identifies the governing principle of federal law, but
unreasonably applies that principle to the facts of the
prisoner's case. **Id. at 413**.

Here, the only operative habeas corpus claim is ineffective
assistance of counsel. Pursuant to the established Nebraska
procedure, that claim was not advanced on appeal, but rather
was alleged for the first time on collateral review. Each of
the state courts which considered the claim on state post-
conviction denied it summarily, without reference to any
controlling federal constitutional law. Where, as here, the
state court reaches a decision on the merits but provides no
reasoning to support its conclusion, a federal habeas court
independently reviews the record to determine whether habeas
corpus relief is available under section 2254(d). **Delgado v.
Lewis, 223 F.3d 976, 982 (8th Cir. 2000)**.

16

1. **Ineffective Assistance of Counsel Claims and the Duty
to Investigate**

A. **Controlling Legal Principles:**

The general principles which apply to Petitioner's claim
that he received constitutionally inadequate representation
are well settled. A defendant claiming ineffective representation
bears the burden of proving by a preponderance of the evidence
both: (1) that counsel's performance was deficient, i.e., that
the representation fell below an objective standard of
reasonableness, and (2) that there is a reasonable probability
that, but for counsel's unprofessional errors, the result would
have been more favorable to defendant - in other words, a
probability sufficient to undermine confidence in the outcome.
**Strickland v. Washington, 466 U.S. 668, 694 (1984).** At the same
time, a defendant has the right to the effective assistance
of counsel at trial, and thus is "entitled to the reasonably
competent assistance of an attorney acting as his diligent and
conscientious advocate.

With respect to the question of what constitutes an
"objective standard of reasonableness" for attorney performance,
the United States Supreme Court has declined to articulate
specific guidelines for appropriate attorney conduct, and instead
has emphasized that "the proper measure of attorney performance
remains simply reasonableness under prevailing professional

17

norms." **Wiggins v. Smith, 539 U.S. 510 (2003).** Accordingly,
"before counsel undertakes to act, or not to act, counsel must
make a rational and informed decision on strategy and tactics
founded upon adequate investigation and preparation." Hence,
although a court must presume that counsel's conduct falls within
the "wide range of reasonable professional assistance", see
**Bell v. Cone, 535 U.S. 685, 702 (2002),** counsel's alleged
tactical decisions must be subjected to "meaningful scrutiny",
see **In re Avena, 12 Cal.4th 694 (1996),** and must be "informed",
so the **before** counsel acts, he or she "will make a rational
and informed decision on strategy and tactical founded on
adequate investigation and preparation."

In **Strickland,** the Supreme Court emphasized that "tactical"
decisions, although entitled to a heavy measure of deference
if undertaken following a reasonable investigation, are only
as reasonable as the investigation on which they are based:

> Strategic choices made after thorough investigation
> of law and facts relevant to plausible options
> are virtually unchallengeable; and strategic choices
> made less than complete investigation are reasonable
> precisely to the extent that reasonable professional
> judgments support the limitations on investigation.
> In other words, counsel has a duty to make
> reasonable investigations or to make reasonable
> decisions that make particular investigations
> unneccessary. In any ineffectiveness case, a
> particular decision not to investigate must be
> directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference
> to counsel's judgments.

**Strickland, supra, 466 U.S. at pp. 690-691.**

18

In **Wiggins v. Smith, 539 U.S. 510,** the Supreme Court
applied this basic principle in expressly determining whether
a lawyer's pre-trial investigation was constitutionally
deficient. In **Wiggins,** a Maryland state court trial, the
defendant was convicted of robbing an elderly women and drowning
her in the bathtub at her apartment. The defendant was eligible
for the death penalty, but the defense decided not to put on
any mitigation evidence. The defendant was convicted, and alleged
on habeas corpus that his counsel had been ineffective.

The high court explained that its focus was not on whether
counsel should have presented a case in mitigation, but on
"whether the investigation supporting counsel's decision not
to introduce mitigating evidence of (the defendant's) background
was itself reasonable." **Wiggins supra, 539 U.S. at p. 523.**
In reviewing the adequacy of defense counsel's legal
representation, the high court found that trial counsel had
abandoned their investigation of the defendant's background
after having acquired only "rudimentary" knowledge of his history
from a narrow set of sources. **Id., at P. 524.** The court found
that this limited investigation not only was unreasonable under
then-applicable standards, but that it was also unreasonable
in light of the leads that counsel actually discovered - leads
which would have caused any reasonable competent attorney to
realize "that pursuing these leads was necessary to making an
informed choice among possible defenses...." **Ibid.** The court
also found that, because counsel spent insufficient time

19

considering and developing a trial strategy, counsel's failure

to investigate thoroughly resulted from inattention, not reasoned

strategic judgment. The **Wiggins** court also rejected the idea

that because counsel had some information to work with, they

were in a position to make a tactical choice not to present

a mitigation defense. Instead, the court stated that, in

assessing the reasonableness of an attorney's investigation,

a court must consider not only the quantum of evidence already

known to counsel, but also whether the known evidence would

lead a reasonable attorney to investigate **further**. Hence,

**Strickalnd** could not read to render trial counsel's conduct

bulletproof under the Sixth Amendment merely by saying it was

done for "strategic reasons". Rather:

> (E)ven assuming that counsel limited the
> scope of their investigation for "strategic
> reasons", **Strickland** does not establish that
> a cursory investigation automatically justifies
> a tactical decision with respect to ... strategy.
> Rather, a reviewing court must consider the
> **reasonableness of the investigation said to
> support that strategy.**

**Wiggins**, **supra**, 539 U.S. at p. 527 (emphassis added).

Applying the above principles as a guide to determining

whether counsel's performance was deficient, the **Wiggins** court

found that counsel "chose to abandon their investigation at

an unreasonable juncture, making a fully informed decision with

respect respect to ... strategy impossible." Id., at 527-528.

The court therefore concluded: "Counsel's investrigation ...

did not reflect reasonable professional judgment. Their decision

20

to end their investigation when they did was neither consistent
with the professional standard that prevailed in 1989, nor
reasonable in light of the evidence counsel uncovered ...-evidence
that would have led a reasonable competent attorney to investigate
further. **Ibid**, applying **Wiggins** ("What matters is the substance
of the investigation - whether counsel in fact explored those
avenues reasonable counsel would have pursued in light of what
was known and in light of the defense strategy.")

      In sum, the **Strickland** test dose not afford any slavish
deference by trial counsel that are based - not on informed
"tacticle" choices, but rather on a **failure to conduct reasonable
investigation in the first place.** Similarly, in the case at bar,
it is trial counsel's failure to investigate that is assailed,
rather than informed tactical decisions made in the wake of a
reasonably thorough investigation. We now proceed to apply these
general principles to the ineffective assistance of counsel
claims made herein by Petitioner.


## Deficient Performance


## B. Failure to Investigate and Prepare For Trial


      The duty to investigate is part of a defendant's right
to reasonably competent counsel. Indeed, "The principle is a
fundamental that the failure to conduct a reasonable pre-trial
investigation may in itself amount to ineffective assistance

                               21

counsel." **United States v. Tucker, 716 F.2d 576, 583 n.16 (9th Cir. 1993).** The American Bar Association states the duty as follows:

> it is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities.

ABA Standard 4-4-1. Moreover, "The investigatory process should begin immediately on appearance as counsel for a defendant." (Id, Standard 4-4.1.) As summarized in the commentary to Standard 4.3. (emphasis added):

> An adequate defense cannot be framed if the lawyer does not know what is likely to develop at trial ... In criminal litigation, as in other matters, the information is the key guide to decisions and action. The lawyer who is ignorant of the facts of the case cannot serve the client effectevly.

Furthermore, the duty to investigate does not depend upon the lawyer's ability or experience: "The most able and competent lawyer in the world can render effective assistance in the defense of his client if his lack of preparation for trial results in his failure to learn of readily available facts which might have afforded his client a legitimate justiciable defense." **Harris v. Blodgett, 853 F.Supp. 1239, 1255 (W.D. Wash. 1994)** (citing **Tucker**, supra, and **McQuen v. Swensen, 498 F.2d 207, 217 (8th Cir. 1994).**

In violation of these basic principles, trial counsel

in the instant case made no discovery (even though the prosecution did file a motion for discovery), hired no investigator, and did no independent investigation. This fundamental failure to determine the facts from any source was deficient performance. See **Harris v. Blodgett**, supra; see also **Wiggins v. Smith, 539 U.S. 510, 522, 156 L.Ed.2d 471 (2003).**

**C. Failure to Hire Investigator to Identify and Interview Witnesses, (potential witnesses).**

Petitioner was denied effective assistance of counsel when trial counsel failed to hire an investigator to identify and interview potential witnesses, witnesses that would have changed the outcome of Mr. Kelly's trial, as Mr. Kelly would have been able to go to trial, instead of accepting a plea bargain. As a reasonable probability existed.

Petitioner was denied an opportunity to present the names of these witnesses during the postconviction level, as the district court denied the Petitioner an evidentiary hearing, as an evientiary hearing, would have allowed the Petitioner to present depositions' from his trial attorney, stating the reasons why he didn't hire an investigator to check into the potential witnesses. For this very reason, Petitioner was in-fact prejudiced, and the states ruling on this matter was contrary federal law, see **Wiggins v. Smith, 539 U.S. 510, 522 (2003).**

23

**D. Failure to Call Important Defense Witnesses.**

Counsel's lack of investigation also resulted in the failure to call important lay defense witnesses who would have helped the defense to negate the Sexual assault elements necessary for sexual assault.

primarily, counsel failed to call Petitioner's girl-friend, to testify as to Petitioner's state of mind, the type of person he is and he was not some serial rapist as the state had him out as. Had trial counsel investigated this witness, there is a reasonable probability that there would have been a different outcome, such as, the Petitioner would have went to trial instead of excepting the plea deal.

**E. Failure to Investigate or Present Expert Testimaony Regarding Petitioner's Mental and Emotional State of Mind.**

Trial counsel could and should have the Petitioner evaluated and, then an expert could have assisted the defense in an explanation of defense, "innocence" of the Petitioner, had trial investigated or presented testimony regarding Petitioner's mental and emotional state of mind, there is a reasonable probability that there would have been a different outcome in the trial.

**The Cumulative Effect of the Foregoing Errors.**

24

Taken togather, the above-described errors amount to a pattern of utterly deficient investigation in the face of facts which can and should have been developed to support both perfect and imperfect defense.

As the 9th Cir Court of Appeal stated in **Turner v. Duncan, 159 F.3d 449, (2010)**

> "When an attorney has made a series of errors that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice." id., at 457 citing **Harris v. Wood, 64 F.3d 1432, 1438-39 (9th Cir. 1998)).**

The aggregate effect of the above claims discussed above, supra is sufficient to satisfy the deficient performance prong of the ineffective assistance of counsel claim. See, e.g., **Caro v. Calderon**, supra, **165 F.3d 1233**, (remanding for evidentiary hearing following summary dismissal of IAC claim on grounds that trial counsel had failed to investigate defendant's potential mental impairments) **Turner v. Duncan, 159 F.3d 449 (2010). (same).** By instead summarily denying his IAC claim without a hearing." Petitioner's Sixth Amendment rights were violated.

## PREJUDICE

There are several factors establishing prejudice from counsel's deficient performance.

**First**, although the evidence was uncontradited that Petitioner actually raped the alleged victims' Brandi Allen, and Ashlianne.

25

The evidence that was uncotradited , were statements'
that Brandi Allen, and Ashlianne Ivy had made to the Lancaster
County Sheriff's Department, no argument made concerning if
a rape kit was going to be presented during a trial. Trial counsel
was ineffective in that he failed (1) to adequately prepare
for a hearing to sever; (2) did not adequately investigate and
prepare Kelly's case for trial; (3) trial counsel failed to
request recusal of the district court judge; (4) did not
adequately question witnesses during discovery depositions;
(5) trial counsel coerced Mr. Kelly into entering pleas of no
contest; (6) failed to file suppression motions; (7) did not
request a line-up identification from the alleged vitims; (8)
provided improper advisements regarding sentencing; (9) failed
to answer Mr. Kelly's questions; (10) failed to arrange an
independent psychological evaluate of Mr. Kelly; and (11) failed
to arrange independent analysis of the DNA samples gathered
by law enforcment.

Most of these trial counsel errors where argued in the
Nebraska Court of Appeals' but the Nebraska Court of Appeal's
ruling was contrary to clearly established federal law. See
**State v. Kelly, A-06-922.** As the Court summarily affirmed the
district court's judgment on April 3, 2007.

Finally, even though defense counsel did no investigation
and put on no evidence other then what the prosecution told
him, uncorroborated by any other evidence defense counsel could
muster. In sum, there is a reasonable probability that, had

26

defense counsel not performed deficiently, the verdict would likely have been more favorable to Petitioner then it was.

Assuming for the sake of argument, this court finds that counsel waived the error's claimed and argued in the prceeding section of this brief by agreeing that the police reports were sufficient for a finding of guilt, then both elements of ineffective assistance of counsel have been established. (For the sole purpose of avoiding needless duplication, the prior discussion relating to the test for ineffective assistance of counsel presented earlier in this brief is hereby incorporated by reference).

First, the record does not reveal any tactical or strategic reason why trial counsel would have allowed his client to enter into such a plea agreement. For the reasons and under the law set forth in the preceding section of this brief, had counsel not done so, the trial court would have been unable to enter a verdict of guilty on all counts. Trial counsel's failure to exercise due diligence in this context cannot be deemed a tactical decision and falls below an objective standard of reasonableness.

Second, the prejudice here is self-evident. Again, as set forth in the preceding sections of this brief, the police reports, and statements made by the alleged victims did not set forth sufficient evidence for a finding of guilt on either charge. Counsel's performance was deficient and Mr. Kelly was prejudiced, with the result that he was deprived of his

27

constitutional right to effective assistance of counsel, and
is entitled to reversal of his convictions.

## ARGUMENT

### III

**PETITIONER WAS DENIED AN OPPORTUNITY TO TOOLS TO CONSTRUCT
A PROPER DEFENSE**

34. Denial of Tools to Construct a Defense

In **Ake v. Oklahoma, 470 U.S. 68, 71 (1985)**, the Supreme
Court recognized that indigent defendant's are entitled to
independent experts when their assistance "may well be crucial
to the defendant's ability to marshall a defense." **Ake, 470**
U.S. at 80. The Court conducted a Fourteenth Amendment due-
process analysis, **Id, at 87,** and held that without independent
experts defendants could be denied "meaningful access to
justice." **Id., 470 U.S. at 76-77.** This was because, while jurors
may disregard a defendant's testimony or a lawyer's argument,
experts "assist lay jurors, who generally have no training in"
scientific or medical matters, "to make a sensible and educated
determination about" the contested issues **Id. 470 U.S. at 81.**
See also **Cowley v. Stricklin, 929 F.2d 640 (11th Cir. 1991);
Kordenbrock v. Scroggy, 919 F.2d 1091 (6th Cir.)(en banc), cert
denied, 499 U.S. 970 (1991); Smith v.McCormick, 914 F.2d 1153
(9th Cir. 1990); Blake v. Kemp, 758 F.2d 523 (11th Cir,), cert**

28

denied, 474 U.S. 998 (1985).

Ake involved the need for a psychiatrist, but its holding encompasses other necessary experts as well. See Little v. Armontrout, 855 F.2d 1240, 1243 (8th Cir. 1987), cert denied, 487 U.S. 1210 (1988) ("the rule of Ake should be applied ... where the expert in question is not a psychiatrist ... (because) there is no principle way to distinguish betweeen psychiatric and nonpsychiatric experts."); Moore v. Kemp, 809 F.2d 702, 711-12 (11th Cir. (en banc), cert denied, 481 U.S. 1054 (1987) ("We ... assume, for sake of argument, that the due process clause could require the government, both state and federal, to provide nonpsychiatric expert assistance to an indigent defendant upon a sufficient showing of need."); Buttrum v. Black, 721 F.Supp. 1268 (N.D. Ga. 1989) (Ake not limited to its facts); Ray v. State, 897 S.W.2d 33, 338 (Tex. Crim.App. 1995) (forensic pathologist); but see Baxter v. Thomas, 45 F.3d 1501, 1511 n.24 (11th Cir. 1995) (neither the "Supreme Court, nor this court, has held that the Constitution requires a state to provide an indigent defendant with nonpsychiatric expert").

The Supreme Court in Ake did not address the question of prejudice. Because an element of the constitutional violation is that independent expert assistance was crucial, most courts which have addressed Ake error reverse if the error is found, without conducting a harmless error analysis. See Cowley, Kordenbrock, Smith, supra; but see Tuggle v. Netherland, 116

29

S.Ct. 283, 286 (1995) (remand is "appropriate to allow the Fourth
Circuit to review the case under the harmless-error standard
appropriate to collateral review.") (Scalia, J., concurring).

It is apparent that Mr. Kelly, was denied an opportunity
to have an expert appointed to his case, as for counsel coerced
Mr. Kelly into excepting a plea offer.

An expert would have been able to demonstrate to the jury,
what kind of behavior is symptomatic or tipical of rape victims.
This is because, "assist lay jurors, who generally have no
training in" scientific or medical matters.

Had Mr. Kelly been provided an expert in the filed of
behavioral secience, the defendant would have been able to
demonstrate that the alleged victims did not exhibit any of
the hallmarks of women ho have suffered through a traumatic
sexual assault.

Petitioner was denied a meaningful acces to justice, in
violation of the 5, 6, and 14 Amendments of the United States
Constitution. Petitioner should be granted an evidentiary hearing
in the this Court.

## CONCLUSION

For the above stated reasons, Mr. Kelly prays that this
Honorable Court grant him relief in the form of a writ of habeas
corpus.

Dated this 19 day of ~~January~~ march 2015.

30

Respectfully submitted:

*Kenneth Kelly*
Kenneth E. Kelly
Pro Se - Defendant
Lincoln, Nebraska, 68542

## AFFIDAVIT

I, Kenneth E. Kelly, Affiant herein, depose, states and verifies that I have read the foregoing attached document - writ of habeas corpus - and to the best of my knowledge it is true and correct.

Dated this 19 , day of ~~January~~ march 2015.

*Kenneth Kelley*
Affiant - Defendant

31

Inmate Name Kenneth Theile
Inmate Number 104458
Box 2500
Lincoln, NE 68542-0500
Notice: This correspondence was mailed
from the Nebraska State Penitentiary.
Its contents are uncensored.

Hasler
03/26/2015
**US POSTAGE**   FIRST-CLASS MAIL
$02.03⁰



ZIP 68508
011D12602735

46·03·13

Clerk of U.S. District Court

Roman. L. Hruska Federal Courthouse

111 South 18th Plaza

Suite 1152

Omaha, NE 68102 - 1322

**RECEIVED**

MAR 3 0 2015

CLERK
U.S. DISTRICT COURT
OMAHA